IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

BETHANY ANNE POLECAT, )
)
                 **Plaintiff,** )
)
v. ) Case No. CIV–22–137–JAR
)
KILO KIJAKAZI, )
**Acting Commissioner of the** )
**Social Security Administration,** )
)
                 **Defendant.** )

## OPINION AND ORDER

Plaintiff Bethany Anne Polecat (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only

unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

## Claimant's Background

The claimant was sixty-three years old at the time of the administrative hearing. (Tr. 203). She possesses at least a high school education. (Tr. 203–204). She has worked as a data entry clerk. (Tr. 154). Claimant alleges that she has been unable to work since July 28, 2018, due to congestive heart failure, AFib, high blood pressure, arthritis, and anxiety. (Tr. 223–224).

## Procedural History

On August 1, 2018, Claimant protectively filed for disability insurance benefits pursuant to Title II (42 U.S.C. § 401, et seq.). After an administrative hearing, Administrative Law Judge Thomas Cheffins ("ALJ") issued an unfavorable decision on July 29, 2021. Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly analyze Claimant's impairments at step two, (2) assigning Claimant an RFC which is not supported by substantial evidence, (3) improperly considering the credibility of Claimant's subjective complaints, (4) failing to ascertain the demands of Claimant's past relevant work, and (5) failing to follow Rule 201.06 at step-five.

**Step Two Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of cardiomegaly, congestive heart failure, acute myocardial infraction, hypertension, coronary artery disease, atrial fibrillation, cardiomyopathy, lumbar spondylolisthesis status-post fusion, osteoarthritis, asthma, and morbid obesity. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform sedentary work with limitations. Specifically, claimant can never climb ladders, ropes, or scaffolds. However, Claimant can occasionally climb ramps and stairs, balance, kneel, crouch, crawl, work unprotected heights, and work with moving machinal parts. Claimant can work in humid and wet environments as well as around dust, odors, fumes, and pulmonary irritants. The ALJ also found that Claimant can work in extreme cold or heat. Occasionally, Claimant can be exposed to excessive vibration. (Tr. 150).

After consultation with a vocational expert, the ALJ found that Claimant could perform her past relevant work of a data entry clerk as she actually performed the position and as it is generally performed. (Tr. 153–154). As a

result, the ALJ found Claimant was not under a disability from July 28, 2018, through the date of the decision. (Tr. 154).

Claimant contends that the ALJ improperly considered her impairments at step two when he failed to find her mental impairments were severe. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007) (quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)); Soc. Sec. Rul. 85-28, 1985 WL 56856 (Jan. 1, 1985).

To the extent Claimant contends her anxiety and depression should have been determined severe at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not

5

cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.* (quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008)).

It is clear that the ALJ considered the evidence pertaining to Claimant's mental health treatment; however, the ALJ nonetheless found that her mental health impairments were mild and did not "significantly limit her ability to perform basic work-like activities." (Tr. 148). Although Claimant suggested that the ALJ mischaracterized the evidence by asserting that "she was never referred to a mental health professional," in contradiction with the evidence of record, the Court interprets this contention as pertaining to the specific medical record then presently being considered rather than a broader assertion about the record as a whole. (Tr. 148, 520). Nonetheless, even if the Court considered this an error, such error would be harmless as the ALJ nonetheless wholly considered Claimant's mental impairment evidence. As the ALJ found Claimant to have severe impairments, his failure to classify her anxiety and depression does not constitute reversible error.

### Evaluation of Subjective Complaints

Claimant next argues that the ALJ improperly evaluated her subjective complaints by improperly finding Claimant uncredible based solely on a comparison with objective medical evidence but no other evidence in the record. Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a

whole. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's physical symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 404.1529. He determined Claimant's medically determinable impairments could reasonably cause her alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (Tr. 150–151).

The ALJ considered Claimant's subjective complaints and found those complaints inconsistent with his review of the medical records as well as Claimant's testimony of daily activities asserted at the administrative hearing. It is a mischaracterization for Claimant to suggest that the ALJ based his opinion

solely on the objective medical opinion evidence. This is not a case of the ALJ misreading the medical evidence, rather he considered all of the evidence, including both medical and testimony, and still found that her assertion of the limiting effects were not consistent with the evidence of record. After reviewing Claimant's testimony, this Court cannot find that the ALJ's finding is unsupported by the evidence.

## Step-Four Determination

Claimant contends the ALJ's RFC finding is not supported by substantial evidence. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart,* 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id.* He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012).

Despite Claimant's contentions, the ALJ considered the medical evidence pertaining to her cardiac impairments, kidney problems, osteoarthritis, back pain, and asthma. The ALJ summarized and considered the relevant medical records relating to each of these impairments and resolved inconsistencies with his assigned RFC. Particularly, the ALJ opined that Claimant's conditions had overall improved since her alleged onset of disability, citing improvements such as: (1) an improvement in her ejection fraction form twenty-five percent to forty-seven percent; (2) no longer requiring assistance with ambulation; and (3) a better controlled kidney infection, following the peak infection that occurred previously. (Tr. 152–153). Overall, the ALJ concluded that Claimant's impairments were well-controlled with medications. (Tr. 153). As for Claimant's asthma and back pain, the ALJ opined that these impairments were treated with only conservative treatments. (Tr. 153).

The ALJ considered Claimant's impairments and resolved the inconsistencies of those impairments with his RFC and still arrived at the assigned RFC. *See* Hill, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'")(quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Further, nothing in the record suggests that any greater limitations should be imposed in the forming of Claimant's RFC. The Court therefor finds no error in the ALJ's RFC determination. *Corber v.*

*Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.")(citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946).

Claimant next contends that the ALJ failed to properly account for the demands of her past relevant work at step four of the evaluation process, and thus his conclusion that she could perform her past relevant work was unsupported by the evidence. Step four has three distinct phases. The ALJ must (i) establish the claimant's RFC, then (ii) determine the demands of her past relevant work (both physical and mental), and (iii) ultimately decide if her RFC enables her to meet those demands. *See, e.g.*, *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.* at 1023, and although the ALJ may rely on information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform h[er] past relevant work." *Id.* at 1025. *See Henrie v. U.S. Department of Health and Human Services*, 13 F.3d 359, 361 (10th Cir. 1993) ("We recognize the tension created when the mandate of [Soc. Sec. Rul. 82-62] is transposed on claimant's step four burden of proof. In this regard, we emphasize that it is not the ALJ's duty to be the claimant's advocate. Rather, the duty is one of inquiry and factual development.").

With regard to phase two, the Court finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the

exertional and skill levels of the jobs was sufficient to establish the physical and mental demands of her past work (Tr. 203–204, 216–217). The ALJ first inquired of Claimant about demands of her past relevant work, including what the work entailed and the physical demands required relevant to sitting/standing and lifting. (Tr. 203–204). During his questioning of the VE, the ALJ asked the VE to classify Claimant's past relevant work and the VE provided that Claimant has worked at as a data entry clerk which was a sedentary semi-skilled job. (Tr. 216). In his decision the ALJ determined that in comparing Claimant's RFC and the mental and physical demands of her past relevant work, she could perform it as actually and generally performed. (Tr. 154). Although the ALJ is prohibited from making this finding without sufficient evidence and explanation, that is not the case here. *See Winfrey v. Chater*, 92 F.3d at 1025 ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review."). Here, the ALJ inquired of Claimant and the VE eliciting testimony on the demands of the data entry clerk job, then citing this testimony found Claimant could perform this work at the assigned RFC. *See id.* at 1024 (finding the ALJ must obtain adequate factual information about the demands of Claimant's past relevant work). As the "ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis," this Court finds no error in the ALJ's step four determination. *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003).

**Step-Five Determination**

Claimant lastly argues that the ALJ erred at step five by not applying the grid rule which would make Claimant defacto disabled. However, the Medical Vocational Guidelines provide that the grid rule and, more specifically, Rule 201.06 cited by plaintiff only apply when the claimant's medical impairments prevent her from performing her past relevant work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2020). As the ALJ here found Claimant is capable of past relevant work and thus did not proceed to the step five determination, the Court finds no error in the ALJ not considering the grid rule.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

**IT IS SO ORDERED** this 27th day of September, 2023.

_____
**JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE**